551 A.2d 232

**COMMONWEALTH of Pennsylvania,**

v.

**William Arthur MARCH, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1988.

Filed Nov. 23, 1988.

Reargument Denied Jan. 4, 1989.

66

S. Lee Ruslander, West Chester, for appellant.

Thomas J. Wagner, Phoenixville, Assistant District Attorney, for Com., appellee.

Before CAVANAUGH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence entered on May 29, 1987.

Appellant was convicted in a jury trial on four counts of corruption of minors, 18 Pa.C.S. § 6301(a), and sentenced to four consecutive three (3) to twenty-three (23) month terms of imprisonment. Appellant filed neither post-verdict motions, a motion for reconsideration of sentence, nor an appeal. After retaining new counsel, however, he did file a petition pursuant to the Post Conviction Hearing Act

("PCHA"), 42 Pa.C.S. § 9541, et seq.,[1] alleging various instances of trial counsel's ineffectiveness. After an evidentiary hearing, the PCHA court found ineffective representation as to sentencing only. Appellant was thus resentenced to four concurrent eleven and one-half (11½) to twenty-three (23) month terms of imprisonment, and to the payment of restitution to the victim, with the amount to be determined at a future hearing.

Appellant now raises six assignments of error below, five of which cite trial counsel as ineffective. Appellant contends that trial counsel was ineffective: (1) in failing to file a motion to quash the corruption counts, which were added to the information after the preliminary hearing without leave of court; (2) in failing to request a bill of particulars specifying the conduct alleged to have corrupted the victim's morals; (3) in failing to object to certain portions of the prosecutor's closing pertaining to the corruption charges; (4) in failing to submit points for charge, and to take exception to the court's charge, pertaining to corruption of minors; and (5) in failing to file a motion in arrest of judgment based on the failure of the Commonwealth to prove corruption. Additionally, appellant assigns error to the sentencing court for its failure, upon resentencing: (a) to place reasons on the record in support of the second sentence; (b) to hold a hearing prior to the imposition of restitution; and (c) to permit the filing of a second motion for reconsideration of sentence.

Upon consideration of the record and the briefs of counsel, we find merit in appellant's second contention of ineffectiveness, with respect to the failure to obtain a bill of particulars, and, accordingly, we vacate and remand for a new trial on the four charges of corruption of minors.

The victim testified to the following facts at the preliminary hearing, and again at trial: The victim had been the girlfriend of appellant's son for four years, and was seventeen (17) at the time of the incidents from which the charges

---

**1.** This petition was filed prior to the 1988 amendments to the Post Conviction Hearing Act, now the Post Conviction Relief Act ("PCRA").

derived. She made weekly visits to appellant's home to pick up produce for her family.

During the victim's weekly visit on September 18, 1984, appellant allegedly forced her to the floor, forcibly fondled, kissed, and performed oral sex upon her. After this alleged attack, the victim left immediately with her produce.

The victim again went to appellant's home, despite the September 18 incident, on October 16, November 20, and December 11 of 1984. On these dates, appellant allegedly, again, forcibly fondled and kissed her; additionally, he forcibly performed two more acts of oral sex upon her, and raped her twice. As in the first incident, the victim left with her produce, after appellant loaded the produce into her car.

Appellant was arrested on February 27, 1985, and charged in the criminal complaint with two counts of rape, two counts of deviate sexual intercourse, and four counts of indecent assault. After a preliminary hearing, and the waiver by appellant of a formal arraignment, the information was prepared, approved, and filed. It contained, however, four new charges, setting forth in the general language of the statute only, that appellant had corrupted the morals of a minor in each of the four incidents.[2] Appellant never received another preliminary hearing on the new

---

**2.** The added counts each read as follows:

MISDEMEANOR OF THE FIRST DEGREE: *Corruption of Minors* that on or about (date) 1984, the defendant above named in the County aforesaid and within the jurisdiction of this Court, did being the age of years and upwards, corrupt or tend to corrupt the morals of a child under age of 18 years or aided, abetted, enticed or encouraged a minor in the commission of any crime.

Citation: 18 C.P.S.A., Section 6301(a).

This language is almost identical to that of the cited statutory section:

§ 6301. Corruption of minors

(a) Offense defined.—Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree.

charges, and the charges were added without leave of court. Despite this, appellant's trial counsel did not file a motion to quash the information. He also did not request a bill of particulars to determine if there were any specific factual allegations, apart from those already contained in the other counts, upon which the Commonwealth intended to base its corruption case.

At trial, appellant testified in his own defense that he had never had sexual intercourse, forcibly or otherwise, with the victim, but had engaged in some consensual oral sex with the victim. As a result, in closing to the jury, the prosecution argued that, even if the jury found the Commonwealth's evidence to be too incredible, they nevertheless had to find appellant guilty of corruption if they "only believe(d) what this defendant told" them. The jury acquitted appellant on the rape, involuntary deviate sexual intercourse, and indecent assault counts, but found appellant guilty on all four corruption counts.

No post-trial motions were filed, and appellant was sentenced to serve consecutive terms of three (3) to twenty-three (23) months imprisonment on each corruption count. Neither a motion for reconsideration, nor an appeal from the judgment of sentence, was filed.

New counsel was hired, and a PCHA (Post Conviction Hearing Act) petition, alleging several grounds on which trial counsel was ineffective, was filed on March 31, 1986. On May 15, 1986, an evidentiary hearing on appellant's PCHA petition was held. The PCHA court found merit to appellant's ineffectiveness claim with respect to his sentence only. As a result, on May 1, 1987, appellant's PCHA petition was denied on all other grounds, but reconsideration of appellant's sentence was expressly granted, and, on May 29, 1987, the judgment of sentence now appealed from was entered.

As we are reversing on the basis of appellant's second contention of ineffectiveness, pertaining to the failure of trial counsel to request a bill of particulars, we shall be limiting our discussion to that contention, and to contention

(1) only insofar as appellant's attack upon the information bears relevance to the bill of particulars question.

The standard of review for ineffectiveness claims is firmly settled. A defendant may not prevail upon a claim of ineffectiveness unless he is able to demonstrate that: (1) the issue underlying the ineffectiveness claim is of arguable merit; and (2) the course of action chosen by counsel had no reasonable basis, independent of hindsight, in the promotion of defendant's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Furthermore, assuming the defendant is able to meet this two-pronged test, he must then be able to demonstrate that the claimed ineffectiveness so prejudiced his defense that he did not receive a fair trial. *Commonwealth v. Pierce*, 345 Pa.Super. 324, 498 A.2d 423 (1985), aff'd 515 Pa. 153, 527 A.2d 973 (1987).

■ As a starting point, we accept as true the Commonwealth's position that contention (1), concerning trial counsel's failure to attempt to quash the information as defective, is without merit. Even presuming that the information could have been quashed, there would have been nothing to prevent the Commonwealth from rearresting appellant on the corruption charges, and, in point of fact, trial counsel testified at the PCHA evidentiary hearing that this is the precise reason he did not file a motion to quash. (N.T., May 15, 1986, pp. 56–57.)

Contention (2), however, pertaining to counsel's failure to request a bill of particulars as to the added corruption counts, presents an entirely different area of inquiry.

■ A motion for a bill of particulars does not question the sufficiency of an indictment or information, but, rather assumes its validity. It does not become part of the indictment or information, and therefore can neither remedy a defective indictment or information, nor render an indictment or information good on its face demurrable. *Commonwealth v. Dimmig*, 310 Pa.Super. 92, 456 A.2d 198, 201 (1983); *Commonwealth v. Hershman*, 171 Pa.Super. 134,

90 A.2d 314, 317 (1952), aff'd 374 Pa. 311, 97 A.2d 77 (1953). The function of a bill of particulars, rather, is to give notice to the accused of the offenses charged in order to permit him to prepare a defense, avoid surprise, and be placed on notice as to any restrictions upon the Commonwealth's proof. *Dimmig*, supra; see also *Commonwealth v. Bartman*, 240 Pa.Super. 495, 367 A.2d 1121, 1127 (1976) (en banc), and *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764, 766 (1972).

■ Where the bill of particulars is broader than the actual evidence at trial, there is no error; conversely, however, where the bill of particulars specifically limits proof to be adduced at trial to specific acts, the Commonwealth is not permitted to obtain a conviction on the offense charged by proof of acts other than those specified in the bill. See *Dimmig*, supra (broad bill of particulars listing several narcotics transactions permitted Commonwealth to present evidence on only one of those specified transactions); also see *Simione*, supra (where bill of particulars gave notice that charge was *sale* of drugs, and proof at trial showed *distribution and not sale*, evidence was inadmissible and judgment of sentence was reversed for failure to prove *sale* ).

Of equal significance, with respect to the actual charge levied against appellant, it has been held that, where an accused is charged with corruption by one act, and the Commonwealth does not prove that act, but proves some other act, a conviction for corruption based upon the other act cannot stand. *Commonwealth v. Davison*, 243 Pa.Super. 12, 364 A.2d 425, 430 (1976) (en banc); *Commonwealth v. Lambert*, 226 Pa.Super. 41, 313 A.2d 300, 301 (1973) (en banc).

■ Turning to the matter *sub judice*, then, trial counsel gave the following testimony on cross-examination at the evidentiary hearing, pertaining to his failure to request a bill of particulars:

"BY MR. RUSLANDER:

"Q.   Mr. Beggs, did you consider whether you should file a bill of particulars in this case?

"A.   No.

"Q.   What is the function of, as you understand it, a bill of particulars?

"A.   Basically an offer of proof.

"Q.   Is it not a way of preventing surprise at trial and limiting the Commonwealth's evidence?

"A.   Certainly.

"Q.   When the—when you first became aware of the charge of corrupting being added to this information, did you specifically explain to Mr. March what was the basis as you understood it for the four specific counts?

"A.   I don't know if I did it immediately upon receiving the information back from the D.A. but yes, I did explain it to him.

"Q.   *Would you tell me, please, what did you tell him concerning the four counts of corrupting as to what specific acts were being relied upon by the Commonwealth to prove those cases?*

"A.   *Those same acts that were used to be—or were being used for the other four counts.*

"Q.   *Would that be—would I be correct in stating that in your opinion that consisted of two counts of forcible rape and two counts of forced involuntary deviate sexual intercourse?*

"A.   *Yes.*

"Q.   Did you at any time in your mind think that the charges included consensual acts between Mr. March and the victim?

"A.   What charges?

"Q.   The corrupting the morals?

"A.   I'm not sure I understand your question, Mr. Ruslander.

"Q. *Did you at any time feel that the basis of the charge of corrupting the morals was consensual sexual activity between Mr. March and the victim?*

"A. *I don't know really whether I did or not. But I would probably say yes, I did, and that would be specifically the oral sex.*

\*       \*       \*       \*       \*       \*

"Q. *Mr. March had informed you, had he not, that he had engaged in one act of oral sex with this young lady?*

"A. *Yes.*

"Q. He was consistent with that from day one, was he not?

"A. No.

"Q. The three counts—well, *what was the basis of the other three counts, Mr. Beggs, in your mind, other than the one act of oral intercourse which Mr. March testified to, what were the basis of the other three counts charging the corrupting the morals?*

"A. *In my mind? The other three incidents, the one specifically dealing with the oral sex and the two dealing with the alleged rape.*

"Q. *Did you explain that to Mr. March?*

"A. *Yes.*

"Q. *Did you ever attempt to verify that or confirm that with Mr. Green?*

"A. *No.*

"Q. *Did you realize that there existed a principal of law that if the basis of a corrupting of the morals charge was set forth on the information or alleged in a bill of information that an acquittal of the specific charge required an acquittal on the corrupting charge?*

\*       \*       \*       \*       \*       \*

"THE COURT: What case?

"MR. RUSLANDER: Commonwealth versus Lambert, 226 Pa.Super. 41, Commonwealth versus Simione, SI-

74

MIONE, 291 Atlantic 2nd 764. Commonwealth v. Davison, 243 Pa.Super. 12. That's set forth on page two of the brief.

"Q. *Were you aware of that principal of law?*

"A. *If that principal of law is as you just stated it I was unaware of it.*

      *          *          *          *          *          *

"Q. *As you sit here today knowing that the jury found Mr. March not guilty of the first eight counts of that information which eight counts charge the specific sexual offenses that he was alleged to have committed would you not have filed a motion for bill of particulars to find out the basis of the corrupting charges, knowing that if the jury acquited [sic] him of the underlying charges that they would have had to acquit him on the corrupting charges?*

"A. *Knowing what I know today would I have done?*

"Q. *Yes. Knowing that principal of law?*

"A. *Yes. If that is the principal of law, yes.*

      *          *          *          *          *          *

"Q. You knew in your case that they had not set forth any specific acts, did you?

"A. There were many specific acts, Mr. Ruslander.

"Q. Excuse me, in the corrupting charges?

"A. No, no specific.

      *          *          *          *          *          *

"Q. *What protection did Mr. March have by your trial strategy of not filing for a bill of particulars when you had—when he admitted kissing this girl? What protection did he have at trial that the jury would not find that he corrupted the morals of this victim because he was 39 and she was 17 by engaging in french kissing?*

"A. *None if he needed that protection.*

"Q. Would you agree with me that at this point we don't know whether or not he needed that protection?

"A. Not knowing exactly what the jury found I'll agree with that, yes.

"Q. But you would agree, will you not, that they could have relied on any act—that they found in the testimony, that they felt corrupted or tended to corrupt, is that correct?

"A. Yes.

"Q. Did you advise your client prior to trial that if he admitted french kissing or petting consensually with the victim that he could be found guilty of corrupting the morals on those counts?

"A. With respect to petting or french kissing.

"THE COURT: I think we're going to have to be a little more specific. I hate to be too nitty gritty but what do you mean by petting?

"BY MR. RUSLANDER:

"Q. *Did you advise Mr. March that if he admitted that he consensually fondled the breasts of the victim that he could be found guilty of corrupting the morals?*

"A. *I don't know whether I advised him of that or not, Mr. Ruslander.*

"Q. *You would agree with me, would you not, that there would have been no need to advise him of that if you were correct in your assumption that the charges were based on what was originally charged against Mr. March?*

"A. *My assumption was based on two acts of intercourse and two acts of oral sex.*

"Q. *And you do agree with me now that there is no sure answer that your assumptions were correct?*

"A. *Absolutely.*"

(N.T., May 15, 1986, pp. 80–89). (Emphasis supplied.)

We believe this testimony, taken in conjunction with the above-cited law, establishes trial counsel's ineffectiveness.

■ With respect to the merit underlying appellant's contention that a bill of particulars should have been sought, the applicable law establishes that, had the Commonwealth alleged in the bill that the corrupting acts with which appellant was being charged were rape, involuntary deviate sexual intercourse, and indecent assault, all of which involve the element of force, or lack of consent,[3] the Commonwealth could not have obtained a conviction upon proof of consensual sexual behavior. An acquittal upon the first eight counts would have mandated an acquittal on the corruption counts.

The Commonwealth attempts to circumvent this point of law by noting that: (1) it is only speculative that the Commonwealth would have specified nonconsensual acts as the bases for the corruption charges, which would have put appellant in the same posture; and (2) appellant was under an obligation to testify truthfully, and, therefore, had to admit to consensual acts with the victim. These arguments, however, ignore a crucial point. Had appellant been placed on notice, by a bill of particulars, that the Commonwealth would be attempting to prove corruption on the basis of *any* sexual interaction whatsoever, appellant was under no obligation whatsoever to testify, and could have elected to maintain silence, taking his chances that the victim would be totally disbelieved. While the Commonwealth suggests that such a course of action would have been "ludicrous", we disagree. Clearly, the jury's verdict of acquittal on the first eight counts is indicative that the victim's credibility was considered to be suspect. Without appellant's tantamount confession of guilt on the stand, it is entirely possible that the jury might have disregarded the victim's story in its entirety.

However, appellant did not have the opportunity to make a knowing and intelligent decision as to whether to testify.

Moreover, we cannot deem counsel's "strategy" to have been reasonable. Despite his understanding that a consen-

3. See 18 Pa.C.S. §§ 3121, 3123, 3126.

sual act could provide the basis for a corruption conviction, he did not request a bill of particulars, and cannot remember if he advised appellant that his own admission of consensual behavior could constitute corruption of a minor. Counsel's basis for the failure to request a bill was not, by his own admission, a knowing and informed selection of "strategy", as he was in complete ignorance of the law pertaining to the limitations placed upon the Commonwealth's evidence by a specific bill of particulars in a corruption of minors context. He further admitted that, had he been aware of the principle of law concerned, he would have requested a bill, and that his failure to do so left his client unprotected at trial.

Finally, it cannot be seriously averred that counsel's unreasonable failure to obtain a bill did not deprive appellant of a fair trial. Had the Commonwealth specified non-consensual acts as the basis for the corruption charges, appellant's own testimony would not have harmed him, and an acquittal on the first eight counts would have mandated acquittal on the corruption counts. Conversely, had the Commonwealth given a bill that permitted evidence of consensual behavior to convict appellant of corruption, appellant could have made an informed, intelligent decision as to whether to invoke his privilege not to give incriminating evidence against himself. In either case, appellant was severely prejudiced at trial.

In light of the foregoing, we deem trial counsel to have been ineffective. We vacate the judgment of sentence, and remand for a new trial on the corruption charges only.[4] Jurisdiction is relinquished.

---

**4.** We note that today's decision is reached with some misgivings, as it would appear that appellant did engage in corrupting acts with the victim, by his own admission. Under the 1988 amendments, appellant would not be eligible for relief, as innocence of the crime charged is a prerequisite to relief. See 42 Pa.C.S. § 9542, as amended, effective April 13, 1988. We commend the legislature, and are hopeful that today's result will not have to be reached in future cases.